OPINION.
{¶ 1} Defendant-appellant Nicholas Monford appeals from the judgment of conviction entered upon his guilty plea to the offenses of (1) felonious assault, in violation of R.C.2903.11(A)(2); (2) unlawful possession of a dangerous ordnance, in violation of R.C. 2923.17(A); and (3) abduction, in violation of R.C. 2905.02(A)(2). At sentencing, Monford requested a three-and-one-half-year prison term. The trial court ultimately imposed that sentence. Monford now challenges the sentence and also contends that he was denied the effective assistance of counsel at the sentencing hearing. This appeal presents an issue of first impression: Where the sentencing court fails to make the findings required to impose more than the shortest sentence for a defendant who has no history of serving a prison term, and fails to make findings and give the reasons required to impose consecutive prison terms, were the errors preserved under Crim.R. 52(B) if the defendant received the prison term he requested? We hold that the errors were waived, as Monford did not suffer any prejudice because he recommended and acquiesced in the sentence.
 {¶ 2} On March 10, 2003, Monford turned up his apartment thermostat to ninety degrees and forced his wife into their bathroom. He kept her confined for four hours in the bathtub with a hunting knife while he repeatedly threatened her life. He poked her with the knife, causing a number of superficial cuts on her body. She ultimately escaped by jumping off the second-floor balcony. She was treated for her injuries at a hospital. When police officers arrived at Monford's apartment, they found him in possession of a sawed-off shotgun.
 {¶ 3} Withdrawing an initial plea of not guilty by reason of insanity and a motion for a competency evaluation, Monford entered a guilty plea to each count in the indictment. Before accepting his guilty plea, the trial court engaged in a detailed Crim.R. 11(C) rights colloquy with Monford and his counsel. His counsel waived a presentence investigation and addressed the court in these words: "I would ask the Court not to impose the maximum sentence in this case. I would ask the Court to impose three and one-half years on the grounds that I think that's enough time for the purposes of incarceration to be accomplished; namely, rehabilitation, deterrence, and punishment." The trial court obliged by imposing concurrent three-year prison terms for the offenses of felonious assault, a second-degree felony, and abduction, a third-degree felony, and a consecutive six-month prison term for the offense of unlawful possession of dangerous ordnance, a fifth-degree felony, for an aggregate prison term of three years and six months.
 {¶ 4} In his first assignment of error, Monford now contends that his sentence of more than the shortest prison term and the imposition of consecutive prison terms must be reversed because the trial court did not make the statutory findings or articulate its reasons as mandated by State v. Edmondson,86 Ohio St.3d 324, 1999-Ohio-110, 715 N.E.2d 131, and State v. Comer,99 Ohio St.3d 463, 2003-Ohio-4165, 793 N.E. 2d 473. The state argues that the three-and-one-half-year prison term, requested by Monford and his counsel, was the equivalent of an agreed sentence that is not subject to review pursuant to R.C. 2953.08(D). An agreed sentence, defined in R.C. 2953.08(D), is a sentence that "has been recommended jointly by the defendant and the prosecution." The transcript of the sentencing hearing is silent concerning any agreement, and the urging by Monford's counsel that the trial court refrain from imposing a maximum sentence in lieu of a three-and-one-half-year prison term shows that the prosecutor and Monford's counsel had not agreed on a sentence.
 {¶ 5} The range of prison terms from which the trial court was authorized to select a sentence for felonious assault, a second-degree felony, was a term of years from two to eight; for unlawful possession of dangerous ordnance, a fifth-degree felony, a term from six to twelve months; and for abduction, a third-degree felony, a term from one to five years. See R.C.2929.14(A). Because Monford had entered a guilty plea to felonious assault, a second-degree felony, he was subject to a presumption favoring the imposition of a prison term to comply with the purposes and principles of sentencing under R.C.2929.13(D).
 {¶ 6} The Ohio sentencing guidelines favor minimum sentences for offenders who have no history of imprisonment. See State v.Evans, 102 Ohio St.3d 240, 2004-Ohio-2659, 809 N.E.2d 11, at ¶ 14. If the offender previously has not served a prison term, the trial court must impose the shortest prison term authorized for the offense unless it "finds on the record that the shortest sentence will demean the seriousness of the offender's conduct or will not adequately protect the public from future crime by the offender or others." R.C. 2929.14(B)(2). The supreme court has held that "the record of the sentencing hearing must reflect that the court found either or both of the two statutorily sanctioned reasons for exceeding the minimum term warranted the longer sentence." State v. Edmondson, 86 Ohio St.3d at 326,1999-Ohio-110, 715 N.E.2d 131.
 {¶ 7} When a trial court imposes non-mandatory consecutive prison terms for multiple offenses under R.C. 2929.14(E)(4) and2929.19(B)(2)(c), it must find that consecutive sentences (1) "are necessary to protect the public from future crime or to punish the offender, and (2) "are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public"; and (3) it must also find one of the following enumerated factors: (a) the offender was awaiting trial or sentence under a community-control sanction or was under post-release control, (b) the offenses were part of one or more courses of conduct, and the physical harm caused was so great or unusual that a single prison term is not adequate, or (c) the offender's criminal history shows a need to protect the public from future crime by the offender.
 {¶ 8} Since consecutive sentences are reserved for the worst offenses and offenders, R.C. 2929.19(B)(2) mandates that the trial court articulate these findings and give its reasons for imposing consecutive prison terms orally on the record. SeeState v. Comer at ¶ 21. The supreme court observed in Comer
that the rationale for requiring the trial court to state its findings and to give its reasons on the record is that an in-court explanation (1) permits meaningful review of its sentencing decision, (2) allows the defendant and counsel the opportunity to correct obvious errors, and (3) encourages the trial court to analyze and apply the statutory factors to the facts of the case. See id. at ¶ 21-22.
 {¶ 9} The trial court apparently intended to make statutory findings to support the sentence it imposed on Monford. Before announcing the sentence, the court stated, "The Court, as counsel knows, is required to make felony sentencing findings. I'd like to do it by written entry." If the trial court made written findings, they are not in the record. Furthermore, written findings would not have satisfied the need for orally stating on the record the court's reasons for imposing consecutive sentences pursuant to R.C. 2929.19(B)(2). See State v. Comer, at ¶ 21-22.
 {¶ 10} No sentencing court should purposely disregard the felony-sentencing statutes. And a sentencing court usually must strictly comply with its statutory duties, such as the duty to impose a "specific prison term" for sanction violations when sentencing an offender to a community-control sanction. See R.C.2929.19(B)(5); see, also, State v. Giles, 1st Dist. No. C-010582, 2002-Ohio-3297. The Ohio Supreme Court, however, has recently noted that there are some situations in which "something less than strict compliance will suffice." State v. Brooks,103 Ohio St.3d 134, 2004-Ohio-4746, 814 N.E.2d 837, at ¶ 32.
 {¶ 11} Here, the trial court's failure to make findings, to give its reasons, and to do those two tasks on the record at the sentencing hearing was erroneous. The question is whether the error was reversible error. See R.C. 2953.08(G). If the defendant, as here, does not raise at trial an error affecting a substantial right, an appellate court typically reviews under the standard of plain error pursuant to Crim.R. 52(B). See State v.Perry, 101 Ohio St.3d 118, 2004-Ohio-297, 802 N.E.2d 643, at ¶ 24. Under a plain-error analysis, the defendant must demonstrate that the plain error affected his substantial rights. But even if the error affected a defendant's substantial rights, an appellate court may disregard the error if it was not called to the trial court's attention. An appellate court should correct the error only to prevent a manifest miscarriage of justice. See id. at ¶ 14.
 {¶ 12} There is a "limited class of constitutional defects, called `structural errors,' that defy harmless-error analysis and are cause for automatic reversal" without a showing that a substantial right has been affected. Id. at ¶ 16. Structural-error analysis is reserved for "constitutional deprivations * * * affecting the framework within which the trial proceeds, rather than simply an error in the trial process itself." Arizona v. Fulminante (1991), 499 U.S. 279, 310,111 S.Ct. 1246 (citation omitted), quoted with approval in State v.Fisher, 99 Ohio St.3d 127, 2003-Ohio-2761, 789 N.E.2d 222, at ¶ 9. Among the limited class of errors that the Ohio Supreme Court recognizes as structural is the complete denial of counsel, a biased trial court, racial discrimination in the selection of a grand jury, the denial of self-representation at trial, the denial of a public trial, and conviction upon a defective reasonable-doubt instruction. See State v. Perry, at ¶ 18.
 {¶ 13} The trial court's failure to perform some of the duties prescribed in R.C. 2929.14(B)(2), 2929.14(E)(4), and2929.19(B)(2) is not structural error. First, the failure of the trial court to provide the required findings and reasons is a statutory, rather than a constitutional, defect. See State v.Perry, at ¶ 24. Statutory or rule violations, even serious ones, will not sustain a structural-error analysis. See, e.g., Statev. Perry, syllabus (trial court's failure to maintain written jury instructions with "papers of the case" as part of the record for use on appeal, in violation of R.C. 2945.10[G]); State v.Esparza, 74 Ohio St.3d 660, 1996-Ohio-233, 660 N.E.2d 1194
(trial court's failure in presiding after ruling on motion for relief from discovery, in violation of Crim.R. 16[B][1][e]). Moreover, the trial court's error in failing to announce and record its sentencing decision does not constitute the type of error that structural error guards against: the error does not "permeate `[t]he entire conduct of the trial from beginning to end' so that the criminal trial cannot `reliably serve its function as a vehicle for determination of guilt or innocence.'"State v. Perry, at ¶ 25 (citations omitted).
 {¶ 14} We, therefore, apply the traditional analysis for unobjected-to error under Crim.R. 52(B), and we hold that the trial court's failure to make the statutory findings and to give its reasons when it imposed more than the shortest prison term and consecutive sentences did not affect Monford's substantial rights. When Monford requested the three-and-one-half-year sentence and the trial court imposed precisely that sentence, the interests protected by the Edmondson and Comer rules requiring the trial court to orally state its findings and to give its reasons on the record at the sentencing hearing were not imperiled. To require the trial court to resentence Monford would serve no useful purpose other than to require slavish obedience to what under these facts would be a statutory ritual by the trial court. See State v. Brooks, at ¶ 33.
 {¶ 15} When, as here, a defendant cannot demonstrate any prejudice flowing from a judicial error, much less that his substantial rights were affected, we hold that the trial court's error in failing to comply with the statutory mandates of R.C.2929.14(B)(2), 2929.14(E)(4), and 2929.19(B)(2) has been waived under Crim.R. 52(B). The first assignment of error is overruled.
 {¶ 16} In his second assignment of error, Monford argues that his counsel's failures to offer mitigation, to waive a presentence investigation, and to emphasize his "positive attributes" denied him the effective assistance of counsel guaranteed by the Sixth Amendment to the United States Constitution.
 {¶ 17} Because his counsel's strategy was successful in avoiding a maximum prison term of eight years for the felonious-assault conviction, as well as the potential for an aggregate sentence of consecutive prison terms totaling fourteen years, we hold that counsel's efforts were not deficient and that Monford was not prejudiced in any way. See Lockhart v. Fretwell
(1993), 506 U.S. 364, 370, 113 S.Ct. 838; Strickland v.Washington (1984), 466 U.S. 688, 104 S.Ct. 2052. The second assignment of error is overruled.
 {¶ 18} Finally, Monford has moved to cite additional authority and to file a supplemental brief because of the holding in Blakely v. Washington (2004), ___ U.S. ___, 124 S.Ct. 2531. Under a strict reading of Blakely, a jury must determine "any fact" that increases "the prescribed statutory maximum" sentence. Id., ___ U.S. ___, 124 S.Ct. at 2536, quoting Apprendi v. NewJersey (2000), 530 U.S. 466, 490, 120 S.Ct. 2348. In State v.Eckstein, 1st Dist. No. C-030139, 2004-Ohio-5059, at ¶ 22, however, this court applied Blakely more broadly, noting that a "minimum sentence * * * was not a `statutory maximum.'" This court held that a defendant's sentence complied with Blakely
because the findings necessary for imposing a sentence greater than the minimum for an offender who had never served a prison term — like Monford — were discretionary factors and did not implicate Blakely where the sentence imposed was within the range authorized by state law. See id. At this time, we elect to follow Eckstein and, therefore, deny Monford's motion to file a supplemental brief.
 {¶ 19} Therefore, the judgment of the trial court is affirmed.
Judgment affirmed.
Doan, P.J., and Sundermann, J., concur.